Argued and submitted November 18, 1997, ballot title certified as modified
January 29, Sizemore's reconsideration denied March 4, 1998

Alice DALE,
*Petitioner,*

*v.*

Hardy MYERS,
Attorney General,
State of Oregon,
*Respondent.*

(SC S44478)

Bill SIZEMORE,
*Petitioner,*

*v.*

Hardy MYERS,
Attorney General,
State of Oregon,
*Respondent.*

(SC S44482)

951 P2d 727

Lynn-Marie Crider, Salem, argued the cause and filed the petition for petitioner Alice Dale.

Gregory W. Byrne, Portland, argued the cause and filed the petition for petitioner Bill Sizemore.

Robert Rocklin, Assistant Attorney General, Salem, argued the cause for respondent. With him on the answering memorandum were Hardy Myers, Attorney General, and Virginia Linder, Solicitor General, Salem.

FADELEY, J.

Van Hoomissen, J., dissented and filed an opinion.

Durham, J., filed an opinion concurring in part and dissenting in part.

**FADELEY, J.**

Petitioners separately challenge the ballot title proposed by the Attorney General for an initiative petition. This court consolidated their challenges for argument and decision. Both petitioners are electors. The arguments presented to us concerning deficiencies in the proposed ballot title were included in their comments on the initial draft ballot title and therefore properly are before us. *See* ORS 250.085(6) (in general, requires elector to submit related written comments to the Secretary of State before this court may consider elector's arguments challenging ballot title on those points).

The Attorney General certified the following ballot title:

> "AMENDS CONSTITUTION: STATE AND LOCAL GOVERNMENTS MUST CONTRACT OUT CERTAIN GOVERNMENT SERVICES
>
> "RESULT OF 'YES' VOTE: 'Yes' vote requires governments to accept certain lower-cost bids to perform government services.
>
> "RESULT OF 'NO' VOTE: 'No' vote keeps system under which governmental services may, but need not, be contracted out.
>
> "SUMMARY: Amends constitution. Currently, state and local governments may, but need not, contract out certain functions to private sector. Measure generally requires governments to accept, or submit to voters at next election, private sector or other government bids to provide same or similar services for 20 percent less. Governments annually must measure, publish, quality and cost, including employee compensation, of providing each service. Core government functions exempted; other services exempted by 2/3 vote of each house, Governor's approval. Forbids union contracts restricting contracting out. Other provisions."

Both petitioners challenge the "yes" and "no" result statements. Petitioner Sizemore also challenges the sufficiency of the caption, but does not challenge the summary. Conversely, petitioner Dale does not challenge the caption, but does challenge the summary.

The proposed measure for which the ballot title is to be used would amend the constitution. A general understanding of the text of some of the changes that would be made by the proposed measure is necessary to a consideration of the challengers' arguments.

The measure would adopt a plan for transferring a current governmental service to a private entity that may propose to perform that service.[1] Each such proposal to transfer services initiates a two-step process.

In the first step, a private entity that does not presently provide the governmental services in question approaches the agency of government that does provide that service and makes a proposal to transfer the provision of the service from the government agency to the private entity. The measure accomplishes that transfer through subsection (2)(a), which provides that "[a] private sector entity may submit a bid to provide the same or similar service" as that provided by the government entity.

The government entity then compares the cost that is promised by the private entity for providing each unit of the service with a precomputed and published governmental cost for each unit. That comparison is to be conducted in the manner directed by other provisions of the measure. The measure contains instructions and definitions concerning computation of the government's cost, and other instructions for calculation of the private entity's cost to perform the same functions. Subsection (6) requires that, for purpose of the comparison, government costs be stated in terms of an hourly wage rate for the government to provide the service. That hourly rate is required to include the cost of health insurance and retirement benefits, if any are provided by either the government or the private entity. The comparison is used to determine whether the private entity proposal promises to provide a savings in comparison to government costs. The measure prohibits the legislature from passing laws regulating hourly wage rates that might impact the calculations of

---

[1] Subsection (9) also provides that "[a] government entity shall not be prohibited from submitting a bid to provide a service under this section, but shall not be given preference or unfair advantage over a private sector entity."

hourly cost that the proposing entity would pay to its workers to provide the service.

The measure's directions for making the cost comparison also require that whatever governmental facilities are presently used to provide the service must be made available to the private entity. The calculated cost to the government must be increased by adding market rental rates to that cost for those facilities, together with an additional assumed amount for taxes that a private party who owned the government facilities would have to pay.

When a service is to be transferred to a private sector entity, "the land, buildings and equipment shall be made available to [the entity] for rent or lease at market value." Subsection (7). Thus, the cost comparison may be based only on the assumption that the private entity is using publicly owned facilities at that rental amount. No costs associated with transferring the service for the first year of the transfer are to be included in the comparison of costs; that is, the mandates of the initiative apply whether or not cost savings are realizable in the first year of the transfer of services. Subsection (2)(b).

After the proposal is received and the cost comparison is made, the government agency may "accept the private sector bid," if doing so "could reasonably be expected to provide the service" at one of the rates of savings stated in the measure.[2]

If the government entity that now is providing the service does not "accept the bid" (*i.e.*, does not accept the private entity's proposal to perform the service), a second step is required under the measure.[3] In that step, the government entity *shall* "submit to the voters at the next election the option of contracting out the provision of the service to the lowest bidder that could reasonably be expected to provide

---

[2] For the first two to four years, a 20 percent rate of savings calculated under the measure is to apply. The measure mandates that two to four years after adoption an election must be held to vote on changing that rate to 10 percent.

[3] This step is conditioned on a finding that the proposal "reasonably" could be expected to produce the then effective rate of savings, based on the cost comparisons as they are structured by the measure.

the service" at the stated savings rate. The measure requires that the ballot title for that election contain information clearly disclosing the "percentage and amount of money which would be saved by contracting out the provision of the service."[4]

Only when three prerequisites are met does the proposed measure *"require"* a government entity to accept a proposal to transfer the service to a private entity. The third of those prerequisites is stated in subsection (19) as: "the voters must have approved the [transfer of the] service."

The measure provides for exempting a few services from the measure's coverage and provides a mechanism for temporary exemption of others. Another of the prerequisites is that the legislature has not exempted that particular service from transfer to a private entity. Subsection (13)(a).

The measure would add those provisions and others to the state constitution and authorizes private actions in court to enforce the measure.

■ We turn to a consideration of petitioners' challenges to the ballot title. Captions must identify the "subject" of a measure. ORS 250.035(2)(a). Petitioner Sizemore argues that the caption implies that neither a government entity nor the voters have any option to refuse to contract out government services and that that implication is incorrect. We agree. The measure does not require acceptance of the proposal. The government entity may refer the proposal for a vote instead, and the voters may approve or reject the proposal. Unless the circumstances specified in the measure are met, the measure does not require contracting out. And the coverage of the measure is subject to exemptions enacted under the terms of the measure. We therefore modify the caption to read:

---

[4] As noted above, the measure employs special directions and definitions that must be used to calculate whether there are savings and, if so, the amount thereof.

AMENDS CONSTITUTION: UNDER SPECIFIED
CIRCUMSTANCES, GOVERNMENTS MUST
CONTRACT OUT CERTAIN GOVERNMENT SERVICES.

■　　　　Both petitioners challenge the statutory sufficiency of the "yes" and "no" result statements. Petitioner Dale argues that the proposed "yes" result statement is "misleading," because the wording incorrectly suggests that the measure merely enacts in the constitution the present competitive bidding system that now is employed by many government agencies to accomplish a given project.[5]

Dale argues further that the measure would permit a single private entity to initiate a transfer of a governmental service without any competitive bidding process, because, under the measure, the government must react to and accept or reject a proposal initiated by a single entity, provided that the proposal promises a "cost saving" under the calculations mandated in the directions and definitions of the measure. For that reason, Dale argues that the term "bid" is inaccurate and should be replaced by the word "proposal."

The Attorney General argues in response that the voters will not be misled by the "yes" result statement because,

"to the average voter, the word 'bid' does not connote the existence of a 'competitive bidding process.' "

That argument does not comment on the voters' understanding of the word when accompanied by the modifiers that are part of the proposed "yes" result statement, *i.e.*, "lower-cost bids to perform government services." The word "bid," here used as a noun, in its context means an "offer of a price" that the bidder "will take for something to be done or furnished." *Webster's Third New Int'l Dictionary* 212-13 (unabridged ed 1993). The word "lower" is a comparative term. The comparison is relative to some other thing. As defined in *Webster's*, "lower" means "relatively low in * * * amount." *Id.* at 1341.

---

[5] In that statutorily controlled system, one qualified contractor is selected from among a number of bidders competing with each other. The government initiates the bidding process and selects those projects for which it will solicit bids. ORS chapter 279, especially ORS 279.015.

Under those common meanings of the words in the proposed "yes" result statement, the voter very likely would think that the present competitive bidding system is involved, rather than a newly created system as described in the measure. Accordingly, Dale's challenges are well taken.

Petitioner Sizemore also argues that the proposed "yes" result statement is inaccurate. He points out that the measure does not *require* the government agency providing the service to accept the private entity's proposal. For the reasons that we expressed with respect to the caption, we agree. The "yes" result statement fails to comply substantially with its statutory purpose. ORS 250.085(5) and ORS 250.035(2)(b).

Accordingly we modify the "yes" result statement:

RESULT OF A "YES" VOTE:   "Yes" vote requires governments to contract out certain government services if specified conditions are met.

The "no" result statement will be conformed to reflect that change, as follows:

RESULT OF A "NO" VOTE:   "No" vote retains present statutory system of competitive bidding at option of government providing service.

■ Petitioner Dale also challenges the accuracy of the description of major effects in the summary. She contends that the provision in the proposed measure requiring a subsequent referendum to reduce the savings rate when that was the rate on which the right of the private entity to have its proposal considered in the first place is a very significant effect of that measure. She argues that it is significant, because it changes the present constitutional structure and authority for deciding whether to take an issue to a referendum. Dale's argument in support of the challenge to the summary also notes that the referendum would change from 20 percent to 10 percent the rate of savings that a private entity's proposal must promise in order for that proposal to be required either to be accepted by a government agency or submitted to a vote, but that the potential change in the savings rate is not mentioned in the proposed summary. The

Attorney General answers that those provisions are not "key" aspects of the measure.

The statutory standard of review is "substantial compliance" with the statutory requirement that the summary be an "impartial statement" that summarizes a proposed measure and its major effects. ORS 250.085(5), 250.035(2)(d). We agree with petitioner Dale that the referendum requirement is an effect of the measure, but do not see it as so major as to require overruling the Attorney General's decisions about which effects to include within the established 85-word limit.

A conforming change in the summary is necessary, however, to avoid the use of the word "bids" that is misleading as noted above. We substitute the word "proposals." We modify the summary to that extent only.

Accordingly, for the reasons stated, we modify the proposed ballot title and certify for use the following ballot title:

AMENDS CONSTITUTION: UNDER SPECIFIED CIRCUMSTANCES, GOVERNMENTS MUST CONTRACT OUT CERTAIN GOVERNMENT SERVICES.

RESULT OF A "YES" VOTE: "Yes" vote requires governments to contract out certain government services if specified conditions are met.

RESULT OF A "NO" VOTE: "No" vote retains present statutory system of competitive bidding at option of government providing service.

SUMMARY: Amends constitution. Currently, state and local governments may, but need not, contract out certain functions to private sector. Measure generally requires governments to accept, or submit to voters at next election, private sector or other government proposals to provide same or similar services for 20 percent less. Governments annually must measure, publish, quality and cost, including employee compensation, of providing each service. Core government functions exempted; other services exempted by 2/3 vote of each house, Governor's approval. Forbids union contracts restricting contracting out. Other provisions.

Ballot title certified as modified. This decision shall become effective in accordance with ORAP 11.30(10).

**VAN HOOMISSEN, J.,** dissenting.

I respectfully dissent. In my view, the Attorney General's certified ballot title substantially complies with the requirements of ORS 250.035. ORS 250.085(5).

**DURHAM, J.,** concurring in part and dissenting in part.

I join the majority in its conclusion that, in some respects, the Attorney General's ballot title requires amendment. I do not agree with the modifications that the majority approves for the certified ballot title or the reasoning that the majority adopts to justify those modifications.

The Attorney General's caption states:

"AMENDS CONSTITUTION: STATE AND LOCAL
GOVERNMENTS MUST CONTRACT OUT
CERTAIN GOVERNMENT SERVICES"

The majority expresses concern about the accuracy of the term "must" in that caption because, it says,

"The measure does not require acceptance of the proposal. The government entity may refer the proposal for a vote instead, and the voters may approve or reject the proposal. Unless the circumstances specified in the measure are met, the measure does not require contracting out." 326 Or at 362.

I disagree with the majority's analysis of the caption. Contrary to the majority's suggestion, the Attorney General's caption does not state or imply that the measure would require a government entity to accept a proposal to subcontract a government service. Moreover, the majority does not address the significance of the term "certain" in the Attorney General's caption. That term invites the reader to read further in the ballot title to learn more detail about the measure's effects, such as the government services that are subject to the measure's contracting out policy. It is the function of the summary, not the caption, to describe the measure's major effect.

The majority approves the Attorney General's summary.[1] That summary describes the government services to which the measure does not apply ("Core government functions exempted; other services exempted by 2/3 vote of each house, Governor's approval."). The summary also describes the procedural prerequisites that must occur in order to impose on government an obligation to subcontract public services to another entity:

> "Measure generally requires governments to accept, or submit to voters at next election, private sector or other government bids to provide same or similar services for 20 percent less."

The Attorney General's caption correctly identifies the measure's subject, and correctly leaves to the summary the task of describing the measure's effects, including the conditions that make subcontracting mandatory.

The majority amends the caption to state:

> "AMENDS CONSTITUTION: UNDER SPECIFIED CIRCUMSTANCES, GOVERNMENTS MUST CONTRACT OUT CERTAIN GOVERNMENT SERVICES." 326 Or 363.

The majority's caption incorporates the phrase "under specified circumstances," but that phrase, like the word "certain," says only that the duty to subcontract is not absolute, and tacitly encourages the reader to examine the ballot title in greater detail to learn more about the "specified circumstances." The Attorney General's ballot title already conveys that information. The majority's certified caption identifies the same subject as does the Attorney General's caption. The addition of the phrase "under specified circumstances" does not alter that fact. The Attorney General's caption adequately describes the subject of the measure, and passes muster under this court's "substantial compliance" standard of review. ORS 250.035(2)(a), 250.085(5).

For the reason identified by the majority, the Attorney General's use of the phrase "lower-cost bids" in the "yes" vote result statement is not accurate and, for that reason, the

---

[1] The majority changes the term "bids" to "proposals," in the third sentence of the summary. As I discuss below, "bids" is incorrect in this context and should be changed to "unsolicited proposals."

statement fails to comply substantially with ORS 250.035-(2)(b). However, the majority fails to disclose that the Attorney General anticipated that potential problem, and offered the following alternative "yes" vote result statement:

"RESULT OF A 'YES' VOTE: 'Yes' vote requires governments to accept certain unsolicited proposals to perform services."

The Attorney General's submission of that alternative wording is commendable. Because the preparation of a ballot title, in large measure, is the Attorney General's task, and is subject to review in this court only for substantial compliance with statutory standards, this court should not disregard the Attorney General's advocacy for alternative wording to cure a potential problem in the ballot title. In my view, the Attorney General's suggested alternative "yes" vote result statement is correct, and I would certify it.

The majority alters the Attorney General's "no" vote result statement. It claims that it does so to reflect the change that it makes to the "yes" vote result statement. However, the majority's altered "no" vote result statement does not reflect the majority's modifications to the "yes" vote result statement. In addition, the majority does not explain why the Attorney General's "no" vote result statement fails to state adequately the result of rejecting the measure even in light of the majority's changes to the "yes" vote result statement. It appears that the majority chooses to alter the Attorney General's "no" vote result statement simply to make it "better." That is not a sufficient reason to justify changing the Attorney General's "no" vote result statement. Accordingly, I disagree with the majority's alteration of the "no" vote result statement.

Petitioner Dale challenges the Attorney General's use of the term "bids" in the summary. I would conform the summary to the change made in the "yes" vote result statement by eliminating the term "bids" and substituting the words "unsolicited proposals." To create room for that change, I would strike the extraneous words "same or" from the third sentence of the summary.

Petitioner Dale also criticizes the Attorney General's summary because it fails to disclose that the measure would compel the legislature to refer to the people a measure that would lower the minimum savings threshold from contracting out from 20 percent to 10 percent. She urges the court to add the following sentence to the summary: "Legislature must propose constitutional amendment reducing savings requirement."

That suggested sentence accurately states a major effect of the measure that the Attorney General's ballot title fails to mention. The Attorney General understates the problem by arguing that the possibility that the savings threshold might change is not a major effect. The focus of concern is that the measure, if adopted, *will compel the legislature to refer another constitutional amendment to the people.* In my view, that is an important modification of the legislature's discretionary power under the state constitution to refer laws to the people, and it is a major effect that the summary should bring to the voters' attention, if possible. However, the Attorney General could include that information only by sacrificing descriptions in the ballot title summary of other important effects of the measure. This is an instance in which the statutory 85-word limit, ORS 250.035(2)(d), prevents disclosure of all of the measure's major effects. For that reason, I cannot say that the Attorney General's summary fails to comply substantially with statutory requirements because it does not mention the point that petitioner Dale raises.

I would certify the Attorney General's ballot title with the modifications discussed above to the "yes" vote result statement and summary. Accordingly, I concur in part and dissent in part from the majority's decision.